**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 30, 2026

# In the Court of Appeals of Georgia

A26A1141. BROWN et al. v. MORGAN AND MORGAN ATLANTA, PLLC.

A26A1229. BROWN v. MORGAN AND MORGAN JACKSONVILLE, PLLC et al.

HODGES, Judge.

Spouses Brian and Veronica Brown sued Morgan & Morgan Atlanta, PLLC and/or Morgan & Morgan Jacksonville, PLLC (collectively the "law firms"), pursuing tort claims, punitive damages, and attorney fees. The law firms moved to dismiss the suits on various grounds, including that the asserted claims were subject to mandatory arbitration. The trial court denied the motions, and the law firms appealed. This Court affirmed in part, vacated in part, and reversed in part, specifically directing the trial court to determine (i) whether the relevant circumstances demonstrated mutual assent to the contract containing the arbitration

clause, and (ii) whether the arbitration clause was rendered unenforceable by OCGA § 9-9-2(c)(9). *Morgan and Morgan Atlanta, PLLC v. Brown*, 373 Ga. App. 459, 467-68(1)(d),(e), 473(3)(d),(e) (908 SE2d 727) (2024). On remand, the trial court concluded that the parties mutually assented to the representation agreement and OCGA § 9-9-2(c)(9) did not apply. Accordingly, the court granted the law firms' renewed motions to compel arbitration. In Case Number A26A1141, Brian and Veronica Brown appeal this ruling as to Morgan & Morgan Atlanta, and in Case Number A26A1229, Brian Brown alone appeals the ruling as to Morgan & Morgan Jacksonville. For the following reasons, we affirm the superior court's decisions in both cases.

Georgia courts are tasked with "uphold[ing] arbitration agreements when possible." *Kindred Nursing Ctrs. Ltd. Partnership v. Chrzanowski*, 338 Ga. App. 708, 715(1) (791 SE2d 601) (2016). See also *Helms v. Franklin Builders*, 305 Ga. App. 863, 865 (700 SE2d 609) (2010) ( "[T]he Georgia General Assembly has established a clear public policy in favor of arbitration.").

> Whether there is a valid agreement to arbitrate is generally governed by state law principles of contract formation, and is appropriate for determination by the court. As the part[ies] seeking arbitration,

Morgan & Morgan Jacksonville [and Morgan & Morgan Atlanta] bear[] the burden of proving the existence of a valid and enforceable agreement to arbitrate. And generally, as with other contracts, where a binding arbitration agreement was bargained for and signed by the parties, it is the complaining party that bears the burden of proving that it nevertheless is unenforceable on grounds of unconscionability or some other defense.

*Brown*, 373 Ga. App. at 464(1) (citations and punctuation omitted). "This Court reviews the grant or denial of a motion to compel arbitration de novo to see if the trial court's decision is correct as a matter of law; but we defer to the trial court's factual findings unless they are clearly erroneous." Id. at 468(1)(d) n. 5 (citation and punctuation omitted).

So viewed, the record shows that in June 2020, Brian Brown retained Morgan & Morgan Jacksonville to represent him in a dispute involving a motor vehicle accident that occurred in Chatham County, Georgia. Brian admits that he signed a document captioned "Authority to Represent" (hereinafter "representation agreement") with the following agreement to arbitrate:

By executing this fee agreement I agree that, with one exception, any and all disputes between me and the Firm arising out of this Agreement, The Firm's relationship with me or The Firm's

3

performance of any past, current or future legal services, whether those services are [the] subject of this particular engagement letter or otherwise, will be resolved through a binding arbitration proceeding to be conducted under the auspices of the Commercial Arbitration Rules of the American Arbitration Association in Georgia. The disputes subject to binding arbitration will include without limitation, disputes regarding attorneys' fees, or costs and those alleging negligence, malpractice, breach of fiduciary duty, fraud or any claim based upon a statute. Both the agreement of the parties to arbitrate all disputes and the results and awards rendered through the arbitration will be final and binding on The Firm and me and may be specifically enforced by legal proceedings. Arbitration will be the sole means of resolving such disputes, and both parties waive their rights to resolve disputes by court proceedings or any other means. The parties have agreed that judgement may be entered on the award of any court of competent jurisdiction in the state of Georgia and, therefore, any award rendered shall be binding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. The one exception to my agreement to arbitrate concerns ethical grievances which I may have. Nothing in this agreement limits, in any way, my right to pursue any ethical grievance against The Firm as permitted by applicable law.

I understand that by agreeing to arbitration as a mechanism to resolve all potential controversies, disputes, or claims between us, I am waiving certain rights, including the right to bring an action in court, the

right to a jury trial, the right to broad discovery, and the right to an appeal. I understand that in the context of arbitration, a case is decided by an arbitrator (one or more), not by a judge or a jury. I agree that, in the event of such controversy, dispute, or claim between us, the prevailing party will be entitled to recover from the losing party all costs and expenses he, she, or it incurs in bringing and prosecuting, or defending, the arbitration, including reasonable attorneys' fees and costs.

I have been advised to review this letter carefully to be certain that it accurately sets forth our agreement. In the event that I do not understand anything in this letter, I will let The Firm know so further written explanations can be provided.

**NOTICE: I am aware that this agreement contains provisions requiring arbitration of fee disputes. I am aware that I should consult with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration, I give up (waive) my right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.**

Morgan & Morgan Jacksonville represented Brown pursuant to the representation agreement, and Brian's claim was settled for $750,000 in 2021.

On March 3, 2023, Brian and Veronica sued Morgan & Morgan Atlanta relating to its legal representation. The complaint expressly set forth two substantive counts: (i) professional negligence; and (ii) breach of fiduciary duties, alleging that the law firm overlooked coverage potentially available to settle Brian's claim. Additionally, the complaint sought punitive damages and attorney fees. By special appearance, Morgan & Morgan Atlanta filed an answer claiming, among other things, that the suit should be dismissed because it had never represented either of the Browns. That same day, Morgan & Morgan Atlanta also filed a motion to dismiss the complaint pursuant to OCGA § 9-11-12(b)(6), asserting that Brian Brown, but not Veronica Brown, had been represented by Morgan & Morgan Jacksonville in connection with the referenced automobile accident. Morgan & Morgan Atlanta attached to its answer a representation agreement that identified "Brian Brown" as the client and "Morgan & Morgan Jacksonville, PLLC" as "The Firm."[1]

---

[1] The record includes two representation agreements signed by different individuals on behalf of Morgan & Morgan Jacksonville. The Browns admit that the representation agreements "contain the same provisions," including the same arbitration provisions.

On June 21, 2023, Brian Brown alone filed suit against Morgan & Morgan Jacksonville.[2] The complaint listed similar factual allegations as the Browns' complaint against Morgan & Morgan Atlanta, and expressly set forth the same counts for (i) professional negligence, (ii) breach of fiduciary duty, (iii) punitive damages, and (iv) attorney fees. Morgan & Morgan Jacksonville filed an answer, as well as a motion to dismiss the complaint and compel arbitration, attaching the representation agreement. Morgan & Morgan Jacksonville argued that Brian Brown's claims should be dismissed for failure to state a claim upon which relief may be granted, because arbitration provided his sole remedy.

The trial court entered orders denying the law firms' motions, finding that although Brian agreed to mandatory arbitration, there were questions regarding the validity or enforceability of the representation agreement that must be resolved by a jury. The law firms appealed. This Court affirmed in part, vacated in part, and reversed in part, rejecting the Browns' primary objections to arbitration and

---

[2] Brian also named Seth Diamond in that lawsuit, but did not mention his involvement in the action. While Morgan & Morgan Jacksonville and Diamond have filed a joint brief, the claims of error do not appear to advance arguments separately as to Diamond. Therefore, all references in this opinion to Morgan & Morgan Jacksonville shall also apply to Diamond.

remanding the cases for the trial court to resolve two remaining arguments raised by the Browns: (i) whether the relevant circumstances demonstrated mutual assent to the contract containing the arbitration clause, and (ii) whether the arbitration clause was rendered unenforceable by OCGA § 9-9-2(c)(9). *Brown*, 373 Ga. App. at 467-68(1)(d),(e), 473(3)(d),(e).

Following remand, the law firms renewed their motions to compel arbitration. The trial court granted the law firms' renewed motions to compel arbitration, concluding that the parties mutually assented to the representation agreement containing the arbitration clause and that OCGA § 9-9-2(c)(9) does not apply to the arbitration provision in the representation agreement. The Browns appeal the court's decisions.

*Case No. A26A1141*

In this case, Brian and Veronica Brown argue that the trial court erred in granting Morgan & Morgan Atlanta's motion to compel arbitration in three material ways: by (1) finding mutual assent to the arbitration provision of the representation agreement; (2) finding that the Georgia Arbitration Code did not render the arbitration provision in the representation agreement unenforceable as one relating to

terms and conditions of employment; and (3) allowing the law firms to inject a new argument regarding the Federal Arbitration Act.

1. Turning to the Browns' first enumeration of error in this case, the Browns argue that the trial court erred in determining that the parties mutually assented to the representation agreement containing the arbitration provision. Specifically, they assert that the case involves two signed copies of the representation agreement, and because the law firm signatures are different on the agreements and the law firms cannot prove who actually signed the operative agreement, the firms "cannot prove mutual assent of the particular parties at issue/if the signatory had authority to bind any of the defendants to this action, Morgan & Morgan's Atlanta office, or any other person or entity for that matter." This argument lacks merit.

As we found in our prior opinion in this case, the law firms' failure to identify the particular individual who signed the representation agreement on behalf of Morgan & Morgan Jacksonville is not dispositive because "under Georgia law, [even] a written, unsigned contract can be enforceable if the parties mutually assent to its terms." *Brown*, 373 Ga. App. at 467(1)(d) (citation and punctuation omitted). Our Supreme Court has explained:

In some instances, the only conduct of the parties manifesting intent is the express language of the agreement. In other instances, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.

*Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n*, 250 Ga. 391, 395 (297 SE2d 733) (1982). Accord *Comvest, LLC v. Corp. Secs. Group*, 234 Ga. App. 277, 280-81(3) (507 SE2d 21) (1998) ("Parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other.") (citation and punctuation omitted). Our analysis then turns on whether — despite the law firms' inability to explain any discrepancies in the representation agreements and identify who actually signed the operative agreement containing the arbitration provision — the parties mutually assented to the representation agreement.

In determining if parties had the mutual assent or meeting of the minds necessary to reach [an] agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning [which] a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that

meaning which the other contracting party knew the first party ascribed to his manifestations of assent.

*Cox Broad. Corp.*, 250 Ga. at 395.

Here, it is undisputed that both parties signed the representation agreement. Brian Brown alleged in his complaint and admitted in his affidavit that he retained Morgan & Morgan Jacksonville to represent him, signing the fee agreement. Morgan & Morgan Atlanta admitted via its verified answer that Morgan & Morgan Jacksonville represented the Browns, and the record contains two representation agreements signed by someone purportedly representing Morgan & Morgan Jacksonville.[3] As the trial court correctly noted, "[w]hile [the Browns] contend

---

[3] The Browns continue to argue that the identification of the individual who signed the representation agreement on behalf of Morgan & Morgan Jacksonville is crucial to determine whether the arbitration provision applies. However, this Court already rejected that precise argument, explaining that the correct inquiry is not "whether the person who signed the [r]epresentation [a]greement could be identified," but "whether the relevant circumstances demonstrated mutual assent to the contract." *Brown*, 373 Ga. App. at 468(1)(d). In addition, the law firms assert that, on remand, Morgan & Morgan Jacksonville identified the individuals who signed the two representation agreements, but the trial court found that such evidence was unnecessary to demonstrate mutual assent. We agree that the individual who signed the representation agreement is not crucial to determine whether the parties mutually assented to the agreement, and the Browns' assertion that the trial court failed to permit "necessary discovery" regarding this issue lacks merit.

Morgan & Morgan has not identified the natural person who signed the [a]greement on its behalf, there is no dispute that *someone* signed on behalf of Morgan & Morgan and, facially, the [a]greement contains signatures on behalf of both [p]arties."[4] These signatures alone demonstrate that the parties mutually assented to the representation agreement: "The affixing of their signatures to the instrument by the parties shows their mutual assent to its terms and provisions." *Extremity Healthcare v. Access to Care Am.*, 339 Ga. App. 246, 252(1) (793 SE2d 529) (2016) (citation and punctuation omitted). See also *Ayer v. Norfolk Timber Inv.*, 291 Ga. App. 409, 411-12(1) (662 SE2d 221) (2008) (noting that "any writing … in which the party charged admits, over his signature, all of the terms of the contract insisted upon by the opposite party, is

---

[4] In their reply brief, the Browns raise an argument regarding Morgan & Morgan Atlanta's ability to enforce the arbitration provision as a non-signatory to the representation agreement. We will not consider this argument because it was not enumerated as error or argued in the Browns' initial appellate brief. As a general rule, "[a]n appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *City of Atlanta v. Mays*, 301 Ga. 367, 372(3) (801 SE2d 1) (2017); *Amendia, Inc. v. Robinson*, _ Ga. App. _ (928 SE2d 770), A26A0419, slip op. at 16(4) (Ga. App. Apr. 7, 2026) (refusing to consider legal and factual arguments raised for the first time in a reply brief). "Once an error has been abandoned in an initial brief, it cannot be resurrected by supplying argument and citation of authority in a reply brief." *Befekadu v. Addis Int'l Money Transfer*, 332 Ga. App. 103, 108(2) (772 SE2d 785) (2015) (citation omitted).

sufficient" to prove his assent to the contractual terms) (citation and punctuation omitted).

Moreover, the trial court also found mutual assent through performance, specifically concluding that "Morgan & Morgan represented [Brian] Brown pursuant to the [r]epresentation [a]greement that he signed." Indeed, a signature is not the only way to show mutual assent. A party's acceptance can be inferred by performance under the contract: "Assent to the terms of a contract may be given other than by signatures. If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound." *Burson v. Milton Hall Surgical Assocs.*, 343 Ga. App. 159, 167(2) (806 SE2d 239) (2017) (citation and punctuation omitted). "Written signature to a contract is to afford mutuality, but is not the only method of obtaining mutuality. Part performance by both parties satisfies the requisites of mutuality and the statute of frauds." *Atlanta v. Foster & Cooper, Inc.*, 136 Ga. App. 159, 160(1) (220 SE2d 724) (1975). Accord *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 229(1) (597 SE2d 470) (2004) ("The law is plain that by accepting benefits and making payments under the contract, appellants ratified it even if the signature was irregular."); *Valiant Steel & Equip. v. Roadway*

*Express*, 205 Ga. App. 237, 240(3) (421 SE2d 773) (1992) ("If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound.") (citations and punctuation omitted). Here, the trial court correctly held that Morgan & Morgan Jacksonville's performance in representing Brian independently established mutual assent, and we find no clear error in this factual finding. See *Brown*, 373 Ga. App. at 468(1)(d) n. 5 (noting that this Court defers to the trial court's factual findings unless they are clearly erroneous).

After considering the writings and actions of the parties surrounding the making of the representation agreement, it is clear that there was a meeting of the minds upon the rights and obligations relating to the agreement. Brian and Morgan & Morgan Jacksonville signed the representation agreement that included the arbitration provision, Morgan & Morgan Jacksonville performed under the contract, and Brian accepted the settlement check procured by Morgan & Morgan Jacksonville on his behalf. Accordingly, we agree with the trial court that the circumstances demonstrate that the parties intended to form and, in fact, formed a binding contract, and this contract contained a provision requiring arbitration of any claims between them.

2. The Browns also take issue with the trial court's conclusion that OCGA § 9-9-2(c)(9) does not apply to render the arbitration provision in the representation agreement unenforceable. We find no merit in this argument.

OCGA § 9-9-2(c)(9) provides that arbitration clauses in *employment contracts* are not enforceable "unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement[.]" See *Vasudeva v. Dagnew*, 361 Ga. App. 244, 247(1) (862 SE2d 326) (2021) ("Under OCGA § 9-9-2(c)(9), an arbitration clause in an employment contract is unenforceable unless the clause is initialed by all signatories at the time of the execution of the agreement.") (citation and punctuation omitted). The Browns argue that the plain terms of the representation agreement drafted by the law firms and signed by Brian show that it is one for employment. As evidence that the agreement is one for employment, the Browns point to the following: (i) just above the signature line on the representation agreement, the document reads, "The above employment is hereby accepted upon the terms and conditions stated herein." and (ii) the agreement includes a provision wherein Brian "agree[s] to reimburse the attorneys for all advanced costs immediately upon any termination of the attorneys' employment." (Emphasis omitted.) Based on these phrases, the

15

Browns contend that there is no ambiguity that the representation agreement is an employment contract, and to the extent that the law firms claim there is any ambiguity, the agreement was drafted by a sophisticated party, a law firm, and is to be construed against the drafter.

Contrary to the Browns' assertions, however, the representation agreement at issue in this case is *not* an employment contract. In *Sams v. Olah*, 225 Ga. 497, 506(8) (169 SE2d 790) (1969), the Georgia Supreme Court specifically considered whether a lawyer could be considered an "employee" of a client. The Court held:

> The State Bar of Georgia is not a labor organization, the lawyer is not an employee, nor is the client an employer, within the meaning of the Act. The engagement of counsel does not create the relation of master and servant[.] The employment carries with it duties and obligations apart from serving the client. He represents the client. The attorney not only serves his client, but the court also, and through the court he serves in a measure the public.

Id. (citation and punctuation omitted). See also *Vollrath v. Collins*, 272 Ga. 601, 603(2) (533 SE2d 57) (2000) ("The engagement of counsel does not create the relation of master and servant. A lawyer is employed, not hired. The employment carries with it duties and obligations apart from serving the client. He represents the client. An

attorney at law acts as an agent for his client/principal.") (citations and punctuation omitted). Our Supreme Court reiterated this ruling, explaining that the Supreme Court regulates the practice of law

> to assure the public that the practice of law will be a professional service and not simply a commercial enterprise. The primary distinction is that a profession is a calling which demands adherence to the public interest as the foremost obligation of the practitioner. As an officer of the court, the lawyer's obligation to the courts and the public is as significant as the obligation to clients.

*AFLAC, Inc. v. Williams*, 264 Ga. 351, 352-53(1) (444 SE2d 314) (1994) (citations and punctuation omitted). We agree with the trial court that under this settled law an attorney is not an employee of a client. Neither have the Browns cited any authority demonstrating that a law firm is an "employee" of a client. See generally *George v. Ashland-Warren, Inc.*, 254 Ga. 95, 96(1) (326 SE2d 744) (1985) (holding that "a corporation is not an 'employee'" for purposes of the Workers' Compensation Act); *Dep't of Human Res. v. Johnson*, 264 Ga. App. 730, 734(1) (592 SE2d 124) (2003) (holding that a corporation could not be an "employee" under the Georgia Tort Claims Act).

Moreover, despite the Browns' argument that the four-page representation agreement "identifies itself, on three separate occasions, as one for 'employment[,]'" they have failed to demonstrate that Brian was Morgan & Morgan Jacksonville's employer. The record instead establishes that the law firm was an independent contractor, and OCGA § 9-9-2(c)(9) does not apply to such employment contracts under Georgia law. See *jOjA Partners, LLC v. Abrams Props.*, 262 Ga. App. 209, 212(3) (585 SE2d 168) (2003) (holding that OCGA § 9-9-2(c)(9) strictly applies only to employees and not independent contractors). Under Georgia law, employee status rests on the "substance of the parties' relationship, not [the parties'] characterization of the relationship[.]" *Eudy v. Universal Wrestling Corp.*, 272 Ga. App. 142, 145(2) (611 SE2d 770) (2005). Indeed, the word "employment" is a generic term that can be used to refer to the employment of employees or independent contractors. See, e.g., *Ga. Messenger Serv. v. Bradley*, 311 Ga. App. 148, 150(1) (715 SE2d 699) (2011) ("Here, the employment contract between Wise and GMS designates Wise as an independent contractor."); *Owens v. BarclaysAmerican/Mortg. Corp.*, 218 Ga. App. 160, 161(1) (460 SE2d 835) (1995) ("In an employer-independent contractor relationship, the employer has the right merely to require results in conformity with

18

the employment agreement, and the independent contractor retains the right to perform the work by his own means, method and manner.") (citation and punctuation omitted).

> In determining whether the relationship of parties under a contract for performance of labor is that of employer and servant or that of employer and independent contractor, the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract.

*Augusta Chronicle v. Woodall*, 360 Ga. App. 576, 577(1) (859 SE2d 617) (2021) (citation and punctuation omitted); accord *Bradley*, 311 Ga. App. at 150(1). In this case, Morgan & Morgan Jacksonville is an independent contractor based on the substance of the representation agreement. That agreement gave Brian no right to control Morgan & Morgan Jacksonville's work, but rather gave Morgan & Morgan Jacksonville broad discretion to manage Brian's representation. Morgan & Morgan Jacksonville was paid on a contingency fee basis only if it was successful in representing the client, was given discretion to file a lawsuit if warranted solely in its professional judgment, and had the discretion to retain other counsel as it deemed necessary to represent Brian as its

client. In addition, there is no dispute that the representation agreement gave Morgan & Morgan Jacksonville, not Brian, "the right to control the time, manner, and method of executing the work[.]" *Woodall*, 360 Ga. App. at 577(1) (citation and punctuation omitted). Accordingly, Morgan & Morgan Jacksonville was an independent contractor at all times relevant to this lawsuit, and OCGA § 9-9-2(c)(9) does not apply. See *jOjA Partners*, 262 Ga. App. at 212(3).

We agree with the trial court and conclude that the attorney-client representation agreement in this case was not an employment contract subject to the requirement of OCGA § 9-9-2(c)(9). Consequently, the Browns' reliance on OCGA § 9-9-2(c)(9) is without merit.[5]

---

[5] To the extent that the Browns attempt to expand this enumeration of error to include an argument that the representation agreement excludes claims relating to ethical grievances, we decline to address that argument. "Matters not enumerated as error will not be considered on appeal." *Adamson v. Sanders*, 279 Ga. 187, 188 (611 SE2d 44) (2005). See also *Complete Wiring Solutions v. Astra Group*, 335 Ga. App. 723, 726 (781 SE2d 597) (2016) (holding that "arguments raised in the appellate brief are not made issues on appeal unless they are properly enumerated as error") (citation and punctuation omitted). Moreover, the Browns have abandoned this argument by (i) consistently asserting that this case involves "legal malpractice," (ii) failing to cross appeal the trial court's determination that the case involved a legal "malpractice action" after arguing that the case was an "ethical grievance" exempt from the agreement to arbitrate malpractice disputes, and (ii) stating in supplemental briefing on remand that "[t]he only matters for this [trial c]ourt to consider on remand are (1) whether there was mutual assent to the agreement, and (2) whether the agreement

3. The Browns argue that the trial court erred in allowing the law firms to assert on remand that the Federal Arbitration Act should apply in this case and preempt the Georgia Arbitration Code. This argument misses the mark.

The trial court's order specifically notes that "[d]ue to its conclusion that OCGA § 9-9-2(c)(9) does not apply to the [r]epresentation [a]greement, this [c]ourt need not address [the law firms'] alternative argument that application of OCGA § 9-9-2(c)(9) is preempted by the FAA." Nonetheless, the court then proceeds to find that the Federal Arbitration Act preempts OCGA § 9-9-2(c)(9). Having concluded that the trial court properly found that OCGA § 9-9-2(c)(9) does not apply in this case, we decline to address the validity of the trial court's alternative holding regarding the Federal Arbitration Act.

In short, the trial court did not err in granting Morgan & Morgan Atlanta's renewed motion to compel arbitration in this case involving Brian and Veronica Brown.

---

pertained to employment under OCGA § 9-9-2. Determination of issues beyond these two specific directives arising out of the arbitration agreement, as commanded by the Georgia Court of Appeals, would be inappropriate." See *State v. Jackson*, 295 Ga. 825, 827-28 (764 SE2d 395) (2014) (reversing the trial court's grant of a motion for new trial post-remand on a ground that had been abandoned prior to the original ruling on the motion for new trial).

4. In this case, Brian Brown alone argues that the trial court erred in granting Morgan & Morgan Jacksonville and Diamond's motion to compel arbitration in the same three material ways he and his wife argued in Case No. A26A1141: by (1) finding mutual assent to the arbitration provision of the representation agreements; (2) finding that the Georgia Arbitration Code did not render the arbitration provision in the representation agreement unenforceable as one relating to terms and conditions of employment; and (3) allowing the law firms to inject a new argument regarding the Federal Arbitration Act. Because Brian's arguments are identical in Case Nos. A26A1141 and A26A1229, and no distinction is made between Morgan & Morgan Atlanta and Morgan & Morgan Jacksonville, we affirm the trial court's order granting Morgan & Morgan Jacksonville

and Diamond's renewed motion to compel arbitration.[6]

*Judgments affirmed in both cases. Barnes, P. J., and Markle, J., concur.*

---

[6] As in Case No. A26A1141, Brian attempts to expand his enumerations of error to include an argument that the representation agreement excludes claims relating to ethical grievances. We likewise decline to address that argument in this case. As stated in footnote 5, "[m]atters not enumerated as error will not be considered on appeal." *Adamson*, 279 Ga. at 188. See also *Complete Wiring Solutions*, 335 Ga. App. at 726. Moreover, as in Case No. A26A1141, Brian has abandoned this argument by (i) consistently asserting that this case involves legal "malpractice," (ii) failing to cross appeal the trial court's determination that the case involved a "legal malpractice action" after arguing that the case was an "ethical grievance" exempt from the agreement to arbitrate malpractice disputes, and (ii) stating in supplemental briefing on remand that "[t]he only matters for this [c]ourt to consider on remand are (1) whether there was mutual assent to the agreement, and (2) whether the agreement pertained to employment under OCGA § 9-9-2. Determination of issues beyond these two specific directives arising out of the arbitration agreement, as commanded by the Georgia Court of Appeals, would be inappropriate." See *Jackson*, 295 Ga. at 827-28.